[No. 32493.   Department One.   September 17, 1953.]

VERA L. MILLHEISLER, *Respondent*, v. J. A. MILLHEISLER, *Appellant.*[1]

*Davis, Trezona, Chastek & Lorenz* (*Will Lorenz,* of counsel), for appellant.

*Malott, Dellwo & Rudolf* (*Robert D. Dellwo,* of counsel), for respondent.

HILL, J.—The issue here presented is whether a written agreement relative to future payments to be made to the wife, which agreement was approved by and made a part of a divorce decree, constituted part of a property settlement or alimony and support money.

It is well settled that the provisions of a divorce decree relative to alimony and support money may be modi-

[1] Reported in 261 P. (2d) 69.

fied on a proper showing, even if the payments were provided for in an agreement between the parties. It is equally well settled that the disposition of property made either by a divorce decree or by agreement between the parties and approved by the divorce decree cannot be so modified. Laws of 1949, chapter 215, § 11, p. 701; Rem. Supp. 1949, § 997-11 [*cf.* RCW 26.08.110]. See *Duncan v. Duncan,* 25 Wn. (2d) 843, 172 P. (2d) 210 (1946).

█ Future payments provided for by an agreement in writing can be either alimony and support money or a property settlement, depending upon the circumstances and the intent of the parties.

We come now to an application of the foregoing principles to the following facts:

Vera L. Millheisler and her husband, J. A. Millheisler, residents of the state of Idaho, entered into a property settlement agreement October 11, 1949, which recited marital difficulties and that they were then living separate and apart and expected to continue so to do, and that they were desirous of making a just and complete settlement of their property rights. It was agreed that certain specific items of real and personal property were to be her separate property and that other property was to be his separate property. The portions of the agreement involved in this controversy are a provision that she shall be paid one half of the royalties from certain oil wells in Kansas, which payments were stated to be her "sole and separate property" and were to continue

". . . as long as she lives, unless a divorce is obtained by either of the parties hereto and the said first party [Vera L. Millheisler, respondent here] remarries, at which time said royalties to be so paid to her shall cease";

and a provision that she shall receive one half of the net profits from the sale of the portion of the crops received as rent from certain agricultural lands in Kansas, the same to be "her sole and separate property" and the payments to continue

". . . so long as said party of the first part lives, unless a divorce is obtained by either of the parties and the said

first party remarries, at which time said payments are to cease."

We quote verbatim the two paragraphs of the agreement which are the basis for Mr. Millheisler's contention that the payment of half the oil royalties and half the net crop rentals constitutes alimony and support money:

"It Is Agreed by and between the parties hereto that the conveying of the interest of the said party of the second part [J. A. Millheisler, appellant here] in said real and personal property above described to the said party of the first part, and the payments to the said party of the first part of said oil royalties and from the sale of the crops of said agricultural lands is being paid to said party of the first part for her support and maintenance and for the support, maintenance and education of the three minor children of the parties hereto; that said three minor children are named Robert LeRoy Millheisler, of the age of 19 years; John Elmer Millheisler, of the age of 17 years, and Herbert Edward Millheisler, of the age of 15 years.

"It Being Agreed and Understood that the said party of the first part shall have the custody, care and education of said three minor children, Provided, further, however, that said party of the second part, their father, shall have the right to visit said children at any and all reasonable times and places and be visited by them."

We also quote the final five paragraphs of the agreement:

"It Is Agreed that this contract was entered into by the respective parties with the advice of counsel, and that each believes the same to be a full, fair and equitable settlement of their respective property rights, and,

"It Is Agreed that this settlement of property rights will be in full force and effect, even though the parties hereto resume marital relations and continue to live as husband and wife, unless it is otherwise provided for in writing by the parties hereto, and

"It Is Agreed that this settlement of property rights by and between the parties hereto shall be in lieu of any alimony, either temporary or permanent, suit money or attorneys fees in the event an action is instituted for divorce by either of the parties hereto, or contested by either of the parties hereto.

"It Is Agreed that in the event a divorce is obtained by either of the parties hereto, that if the Court approves this

contract, which both of the parties hereby request, that the same be made a part of the decree of divorce and binding upon each of the parties hereto.

"It Is Further Agreed by and between the parties hereto that each of the parties hereby expressly agrees that they will execute all deeds, bills of sale, or any and all other instruments or writings that are necessary and required in order to give full force and effect to the terms and provisions of this contract."

Supplemental agreements not here material were made December 14, 1950.

The divorce decree, made and entered December 21, 1950, not only granted Vera L. Millheisler an absolute divorce and the custody of the children, but also contained the following paragraph:

"It Is Further Ordered, Adjudged and Decreed that the Property Settlement Agreement entered into between plaintiff and defendant on the 11th day of October, 1949, together with the two agreements supplementary thereto dated December 14, 1950, and which are filed herewith and are a part of these files, be and the same are hereby approved and confirmed and made a part of this decree by this reference the same as though fully set out herein, and are given full force and effect as a part of the decree of this Court."

The decree contains no provision for or reference to alimony or support money.

After the divorce, Mr. Millheisler moved to Spokane and married again. Vera L. Millheisler, still a resident of Idaho, started an action in Spokane county to compel him to execute the legal documents necessary to enable her to secure the half of the oil royalties and net crop rentals to which she was entitled by the terms of the agreement, and for other relief. By a cross-complaint, J..A. Millheisler sought, in effect, a modification of the property settlement agreement extinguishing any interest that Vera L. Millheisler might have in the oil royalties and net crop rentals, alleging that conditions were changed in that he had married again, two of the children were now past twenty-one years of age and the third was eighteen years old and partially self-

supporting, and Vera L. Millheisler had a substantial income from her activities as a real-estate broker.

A demurrer to this cross-complaint was sustained on the ground that it did not state facts sufficient to constitute a cause of action,

". . . it being the conclusion of the Court that the oil royalty payments and the crop proceeds to which plaintiff is entitled by reason of the property settlement agreement, which is a part of the complaint herein, do not constitute alimony for plaintiff and/or support money for the minor children which can be substantially modified by the Court, but are in reality payments to which plaintiff is entitled by reason of contract, which contract cannot be modified by the Court."

The cross-complaint was dismissed, and on the same date findings of fact, conclusions of law, and a decree were entered granting Vera L. Millheisler that portion of the relief prayed for with reference to the execution of the documents necessary to insure specific performance of that part of the property settlement agreement relating to oil royalties and net crop rentals. From this decree and the order sustaining the demurrer to the cross-complaint and dismissing the cross-complaint, this appeal is prosecuted.

█ It would be difficult to frame an agreement that would more clearly express the idea that the parties were making a disposition of their property rights and that half of the oil royalties and half of the net crop rentals were to be the separate property of Vera L. Millheisler until her death or remarriage. The trial judge, in a memorandum opinion, said:

"The only indication to indicate that this was anything but a specific and final property settlement contract in the agreement of October 11, 1949, is a very short paragraph to be found on page 5 of the Agreement and to the effect that the property conveyed to Mrs. Millheisler was for her support and for the support, maintenance and education of their three minor children. Had emphasis been placed on this provision through the contract, it might possibly be held subject to subsequent modification. In this Court's view, this rather slight reference is completely submerged in the overall provisions of the contract and is not sufficient

of itself to negate the idea that these contracting parties intended a full and final settlement of their property rights.

"Accordingly, it is my opinion and decision that the Cross Complaint does not state a cause of action and that the Demurrer to the Cross Complaint of the defendant must be sustained."

With that statement by the trial judge, we are in accord.

Further, if, by the paragraph referred to (set out on p. 284 *supra*), the oil royalties and net crop rental payments are made alimony and support money, as contended by the appellant, the conveyance of the interest of the appellant to the respondent of "said real and personal property above described" is in the same category. Appellant seeks to escape the effect of this language by saying that the conveyance of the real and personal property referred to is an executed portion of the provision for alimony and support money, and that he seeks to modify only the executory portion of the award for alimony and support money.

The explanation is not convincing, particularly when the other provisions of the contract are considered. The future payments, as well as the specific items of real and personal property, are declared to be her separate property. All the phraseology of the very carefully prepared agreement negatives the interpretation which appellant seeks to place upon it. It is to be noted that this "settlement of property rights" is to "be in full force and effect, even though the parties hereto resume marital relations and continue to live as husband and wife"; and that, in the event of a divorce,

". . . this settlement of property rights by and between the parties hereto shall be in lieu of any alimony, either temporary or permanent, suit money or attorneys fees."

We call attention to the fact that in the decree itself there is no provision for or reference to alimony or support money; nor is there any reference to suit money or attorneys' fees.

We are satisfied that the paragraphs relied upon by the appellant are but explanatory of the seemingly very generous proportion of the property of the parties awarded to the respondent as her separate property.

Appellant argues that what he terms "these periodic payments" are "in lieu of alimony and support and take the place of alimony and support," and hence are subject to modification. Actually, we have here no assured "periodic payments." If no oil is pumped, there are no royalties; it may well be that there will be no crop or no crop rentals in any given year; the time when it is to be determined whether there are net crop rentals is not established. Instead of "periodic payments" in lieu of alimony and support, these payments seem to us an integral part of the property settlement, payable to the respondent as her separate property under all circumstances, including the resumption of marital relations, with specifically enumerated exceptions.

The agreement is just what the parties stated it to be, a "settlement of their property rights." From an examination of the agreement, we can readily understand why appellant might now feel that he had been unduly generous, but it is his contract and the court should not make another one for him.

We are in accord with the rules laid down in the cases cited by appellant, such as *Troyer v. Troyer,* 177 Wash. 88, 30 P. (2d) 963 (1934); *Von Herberg v. Von Herberg,* 6 Wn. (2d) 100, 106 P. (2d) 737 (1940); and *Prime v. Prime,* 172 Ore. 34, 139 P. (2d) 550 (1943). In each instance a decree of the court for maintenance was based upon an agreement of the parties which had been approved by the court, and the decree was held to be subject to modification. Appellant here does not seek modification of a decree providing for maintenance of either the wife or the children; he seeks modification of a contract.

Should an individual's contractual obligations prove insufficient to meet the needs of his divorced wife or children, the court could require additional support for them. The court can add to but not subtract from his contractual commitments, because he has an obligation, which cannot be contracted away, to see that his children are adequately supported within the limits of his capabilities.

We affirm the trial court on the specific ground which it gave for the dismissal of the cross-complaint, *i.e.,* that the

payments to Vera L. Millheisler of the oil royalties and net crop rentals provided for by the property settlement agreement are an integral part of that agreement and do not, and were not intended to, constitute a provision for alimony and support money, and that, consequently, they are not subject to modification by the court.

GRADY, C. J., MALLERY, WEAVER, and OLSON, JJ., concur.