[No. 42559.     En Banc.     June 7, 1973.]

MARIE KINNE, *Petitioner*, v. LEROY J. KINNE, *Respondent*.

*Trena Belsito Worthington,* for petitioner.

*Ernest L. Meyer,* for respondent.

ROSELLINI, J.—The parties to this petition for review were divorced in 1969. At the time, the petitioner was 62 years of age, according to the findings of fact, and was physically and mentally incapable of earning her livelihood. The decree of divorce incorporated a property settlement agreement signed by the parties, which disposed of certain personal property and awarded the family home to the respondent. A lien was imposed upon it in favor of the petitioner. The agreement further provided:

> 3. That Second Party will pay to the First Party the sum of $156.00 per month until her remarriage, death or until First Party has another income in excess of that paid to her by Second Party plus her Social Security of $44.00 per month; that is, until First Party has an income in excess of $200.00 per month from some independent source, and it is further UNDERSTOOD AND AGREED THAT this payment shall be considered property settlement and not alimony and Second Party agrees that said payment will not be reduced or terminated by application of Second Party unless the conditions hereinbefore mentioned are prevailing.

Two years after the decree was entered, the respondent petitioned the court to modify the decree, alleging that the circumstances of the parties had changed, warranting a modification of the support provisions. The trial court held that the respondent was bound by the provisions of the decree declaring the payments to be a property settlement and not alimony and dismissed the action. The Court of Appeals, Division 2, reversed, holding that the contract (and presumably the decree of divorce) was in violation of public policy, because the provision was for alimony and not for a division of property of the parties. (7 Wn. App. 350, 498 P.2d 887 (1972).)

We granted the petitioner's application for review.

█ Alimony decreed by the court can be modified on subsequent application of a party to the divorce, whereas property settlement provisions cannot. RCW 26.08.110. It is the rule in this jurisdiction that provisions of a divorce decree relative to alimony may be modified on a proper showing, even if the payments were provided for in an agreement between the parties; however, the disposition of property made either by a divorce decree or by agreement between the parties and approved by the court cannot be so modified. *Thompson v. Thompson,* 82 Wn.2d 352, 510 P.2d 827 (1973); *Messersmith v. Messersmith,* 68 Wn.2d 735, 415 P.2d 82 (1966); *Fleckenstein v. Fleckenstein,* 59 Wn.2d 131, 366 P.2d 688 (1961); *Millheisler v. Millheisler,* 43 Wn.2d 282, 261 P.2d 69 (1953), and *Duncan v. Duncan,* 25 Wn.2d 843, 172 P.2d 210 (1946).

█ █ Future payments provided for by an agreement in writing can be either alimony and support money or a property settlement depending upon the circumstances and intent of the parties. *Thompson v. Thompson, supra; Messersmith v. Messersmith, supra; Fleckenstein v. Fleckenstein, supra; Millheisler v. Millheisler, supra.* Where, however, the contract is unambiguous on its face, the meaning of the contract is determined from its language and not from parol evidence. *Messersmith v. Messersmith, supra.*

While recognizing that the agreement contained a "clearly expressed" intent that the payments provided therein should be considered a property settlement, the Court of Appeals took account of the fact that the petitioner was 62 years of age and without independent income other than social security; and ruled that public policy required that the intent expressed in the contract, and approved and incorporated by the court in the decree, should be disregarded and the payment held to be alimony and therefore subject to modification on the application of the respondent.

We agree with the first observation of the Court of Appeals—that it is the clearly expressed intent of the parties

that the support payments were a part of the property settlement and not subject to modification. We disagree with its conclusion that the agreement was contrary to public policy.

The respondent agreed to pay the petitioner a certain sum each month, regardless of changes in circumstances, except for certain events set forth in the agreement. We find no authority in our cases for the proposition that such an agreement violates public policy or is invalid for any other reason.

Parties may incorporate in their contracts any provisions which are not illegal or violative of public policy. *Motor Contract Co. v. Van Der Volgen*, 162 Wash. 449, 298 P. 705, 79 A.L.R. 29 (1931). *See* F. Keezer, *The Law of Marriage and Divorce* § 255 (3d ed. John W. Morland 1923); 17 C.J.S. *Contracts* § 235 (1963). An agreement of a husband to pay a designated amount of support is an undertaking which is favored by the courts. *Thompson v. Thompson, supra,* and cases cited upholding property settlement agreements containing provisions for support.[1] Our cases which have upheld such contracts are inconsistent with the notion that a husband may not bind himself to do more than the law requires of him in providing support for his wife.

The Court of Appeals relied upon *Decker v. Decker*, 52 Wn.2d 456, 326 P.2d 332 (1958), in holding that the parties

should not be permitted by their freedom to contract to foreclose the public interest in seeing that adequate provision is made for an otherwise dependent party.

7 Wn. App. at 353. In that case, it was contended that the violation of a provision in a property settlement agreement that the husband would pay the community debts could not be punished in contempt proceedings; and it was held that,

---

[1] *See also Peterson v. Eritsland,* 69 Wn.2d 588, 419 P.2d 332 (1966), holding that an agreement by a putative father to support his child is not against public policy, and *State v. Bowen,* 80 Wn.2d 808, 498 P.2d 877 (1972), holding that unless such an agreement provides adequate support for the child, the mother will not be bound by her agreement not to institute filiation proceedings.

under the circumstances of that case, the husband's duty to pay the debts should be considered in its relationship to his duty to support his wife. In the course of the opinion, we said:

It is clear that the parties to a divorce action cannot foreclose the public interest in their marital responsibilities by a contract or an agreement of settlement. Marital problems involve something more fundamental than nomenclature and technical contract rights. There is no sound reason for allowing a husband to contract away his duty to support his wife and children under the guise of a "property settlement agreement."

52 Wn.2d at 465.

While the latter principle is beyond question, the respondent assumes that the converse is true—that there is no sound reason for allowing a husband to contract to pay his wife (and/or children) an agreed sum in spite of changing circumstances.

The proposition adopted, by implication, by the Court of Appeals has no support in our cases. On the contrary, such contracts, where they have been examined and approved by a trial court, are very generally upheld. *See Thompson v. Thompson, supra,* and other authorities cited above. As we said in *Millheisler v. Millheisler, supra,* the court may add to such contractual obligations if they prove insufficient, but it may not subtract from them. It may add to them because the husband has an obligation, which cannot be contracted away, to see that his children and wife are adequately supported within the limits of his capabilities.

There is nothing on the face of this agreement to indicate that the promised payments do not in fact constitute a part of the property settlement. The respondent asserts in argument, and the Court of Appeals gave great weight to the assertion, that the payments had a present value of $19,000 for a woman of 62 years of age, the age of the petitioner, and that this amount exceeded the total value of the property of the parties. However, this theory admittedly disregards the controverting fact, asserted by the petitioner, that

the respondent has a military pension which had, at the time of the divorce, a value of $80,000. The Court of Appeals was of the opinion, apparently, that no part of this pension could be awarded to the petitioner and therefore it could not be considered in determining whether the agreement embodied an equitable property settlement.

In this the Court of Appeals was in error. A pension, though exempt from taxation, garnishment, attachment, or other legal process, may nevertheless be taken into account in determining a husband's ability to pay alimony. *Heuchan v. Heuchan*, 38 Wn.2d 207, 228 P.2d 470, 22 A.L.R.2d 1410 (1951). The same principle dictates that the fact that a spouse has a vested right to a pension cannot be ignored in computing the value of the property of parties to a divorce. *See Edwards v. Edwards*, 74 Wn.2d 286, 444 P.2d 703 (1968).

These asserted facts are immaterial in any event, since they do not appear on the face of the agreement and the agreement itself is not ambiguous. This agreement, adopted by the court and incorporated in its decree, expressly provides that the payments to be made by the respondent are a property division and not alimony, and in it the respondent promised that he would not seek modification of the provisions. In *Duncan v. Duncan, supra,* this court, in holding that the payments provided for in the agreement under consideration in that case were alimony rather than a property division, said that if the provision had been intended by the parties to operate solely as part of a property settlement and not as alimony, the agreement could have so provided easily. As our subsequent cases show, a provision expressly stating this intent is not necessary,[2] nor has an

---

[2] *See Thompson v. Thompson,* 82 Wn.2d 352, 510 P.2d 827 (1973); *Messersmith v. Messersmith,* 68 Wn.2d 735, 415 P.2d 82 (1966); *Campbell v. Campbell,* 66 Wn.2d 177, 401 P.2d 651 (1965), and *Millheisler v. Millheisler,* 43 Wn.2d 282, 261 P.2d 69 (1953). In the *Thompson* case we found that a property settlement was actually intended, even though the payments were expressly described as "alimony," the payments having more of the characteristics of a property settlement than of alimony and the generally manifested intent of the parties being that a property settlement was intended.

additional factor mentioned in that opinion—the measurability of the value of the total payments to be made—been considered determinative by this court.

Here the parties have done what this court suggested in *Duncan v. Duncan, supra.* They have expressly stated that it was their intent to divide their property. This expression of intent is confirmed by the respondent's agreement not to seek reduction or termination of the payments unless the eventualities mentioned in the agreement should occur. There is nothing on the face of the decree or the agreement to show that these payments would result in an inequitable distribution of the property, assuming that if such a situation appeared, an ambiguity would result, justifying the court in looking beyond the decree and the agreement to find the intent of the parties. Nor does the fact that the payments are terminable upon certain named events (the petitioner's remarriage, death or increase in income) create an ambiguity, since we have recognized in our cases that this factor does not convert a property settlement agreement into an agreement to pay alimony. Contradicting any inference raised by this aspect of the obligation is the clearly expressed intent that changes in the circumstances of the respondent shall not affect the duty to make the payments. In short, a court asked to modify this decree can find upon its face and upon the face of the agreement no reason to disregard the plainly expressed intent of the parties that the payments provided for therein are an integral part of the settlement of their property rights. As such, they are not subject to modification.

There is no allegation of fraud or undue influence, and if there were such an allegation, the time for raising it is past. *See Thompson v. Thompson, supra.*

The agreement, signed by the respondent and incorporated in the decree with his consent, is his contract. He is bound under the decree and the contract.

The decision of the Court of Appeals is reversed and the judgment of the superior court, dismissing the action, is reinstated.

HALE, C.J., FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.