FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUN -4 AM 8: 45

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>HOMEIRA BAKHTIARI,<br><br>        Appellant,<br><br>and<br><br>MASOUD EDALATIE,<br><br>        Respondent. | DIVISION ONE<br><br>No. 76374-1-I<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: June 4, 2018 |

DWYER, J. — After finding that Homeira Bakhtiari was intransigent during proceedings to dissolve her marriage to Masoud Edalatie, the superior court waived Masoud's obligation to pay interest on an equalizing judgment and awarded him attorney fees. We reverse the court's waiver of Masoud's interest obligation but otherwise affirm.

I

Homeira Bakhtiari and Masoud Edalatie married in April 2003 and divorced in 2016. Prior to entry of the decree, the parties executed a CR 2A agreement addressing parenting plan issues.

On March 22, 2016, the parties memorialized a second CR 2A agreement addressing property distribution and maintenance. The agreement required Masoud to pay Homeira $3,000 for 36 months and an equalizing judgment of $370,000. The parties' remaining disputes were reserved for binding arbitration.

On March 24 and April 26, 2016, Masoud submitted applications for a loan to finance his $370,000 obligation under the agreement. Both applications were denied because Masoud did not submit a signed, certified copy of the decree of dissolution.

On April 21, 2016, Masoud's counsel reviewed final orders and spoke with Homeira's counsel by phone.

On May 13, 2016, Homeira's counsel submitted a proposed child support order and worksheets to the arbitrator.

A few days later, the parties submitted their opening briefs to the arbitrator. Masoud requested that there be no interest on the judgment "if it is paid within 60 days of entry of the Decree." He stated that he had applied for two loans to pay the $370,000 judgment, but both "were denied because a final Decree had not been entered." Claiming that it took Homeira's counsel "over two months to prepare the proposed Order of Child Support and Worksheets" and that "[t]he delay in getting this matter resolved is affecting Masoud's ability to obtain a loan and get this matter finalized," Masoud requested an award of attorney fees.

On June 6, 2016, the arbitrator requested additional information from the parties. Masoud submitted his response on June 8. Homeira submitted hers on June 14.

On June 28, 2016, the parties filed the arbitrator's decision in superior court. The arbitrator ruled in part that "[i]f the Judgment is not paid in full within 60 days of entry of the Decree, statutory interest will accrue beginning July 1, 2016." The ruling

2

stated that Homeira should "vacate the home no later than August 20, 2016" and that the parties should bear their own attorney fees.

On July 1, 2016, Homeira asked the arbitrator to determine the date by which Masoud would pay the $370,000. She alleged she could not afford to make an offer on a new home until Masoud paid the judgment.

On July 11, 2016, the arbitrator amended her ruling. Noting that she originally understood that Masoud would pay the judgment on July 1, 2016, the arbitrator stated that it was now clear that Masoud could not "obtain a loan until the Decree is entered. And, this Arbitrator has not been advised when the decree will be entered." Consequently, the arbitrator ruled that Homeira had 45 days to vacate the sentence after full payment by Masoud.

On July 13, 2016, Homeira's counsel filed a notice of withdrawal and an attorney's lien for $14,050.25.

On July 14, 2016, Masoud's counsel filed notice of presentation of a proposed dissolution decree, parenting plan, child support order, and findings and conclusions that were prepared, but never filed, by Homeira's counsel. In a declaration submitted with the notice, he alleged that the notice was necessitated by Homeira's refusal to sign the decree and final orders. He further alleged that Homeira "has been deliberately delaying entry of the Decree . . . so that she can continue to reside in the family home."

On July 15, 2016, Homeira filed a pro se notice of appeal from "the trial settlement entered on 2016 March 15" and the June 28, 2016 arbitration decision and subsequent amendment.

3

On July 25, 2016, the superior court entered final orders and a decree of dissolution. The decree provided, in part: "**If the judgment is not paid in full within 60 days of entry of the Decree, statutory interest will accrue beginning July 1, 2016.**" (Emphasis added.)

On July 26, 2016, Homeira's former counsel informed Masoud by letter that "the lien that I filed . . . requires that before you distribute funds to [Homeira] pursuant to the settlement agreement, arbitration decision, or decree of dissolution, that you pay my . . . attorney lien plus any interest due thereon."

On August 15, 2016, Masoud's counsel informed this court by letter that Homeira's pro se appeal filed on July 15, 2016 preceded the July 25, 2016 entry of the decree and final orders and was "therefore premature."

The next day, the parties filed a "Stipulated Motion for Voluntary Withdrawal of Review" "without court costs or attorneys' fees to either party." We immediately granted the stipulated motion and dismissed the appeal without an award of costs or fees.

On October 6, 2016, Masoud's counsel informed Homeira that he intended to pay her former counsel's lien out of the $370,000 owed to her under the judgment. Counsel indicated that Homeira would have to sign a satisfaction of judgment upon receipt of the balance owing. If she refused to sign, counsel would seek a court order. Homeira responded by e-mail that she would not sign a satisfaction of judgment and that she wanted to receive the entire $370,000 and make monthly payments to her former counsel.

On October 14, 2016, Masoud's counsel replied that he could not "pay the judgment without paying the attorney's fee lien. I am filing a motion to get court approval to pay the lien and have you sign a satisfaction of judgment. I am requesting you pay all my fees." Homeira replied that she would "not give approval for doing this."

On October 17, 2016, Homeira's newly retained counsel informed Masoud's counsel that Homeira had changed her mind and would allow payment of the attorney fee lien out of her judgment amount. But counsel also sought $11,799 in interest on the judgment from July 1, 2016 to October 6, 2016, citing the arbitrator's ruling that "[i]f the judgment is not paid in full within 60 days of entry of the Decree, statutory interest will accrue beginning July 1, 2016."

On October 26, 2016, Masoud filed a motion "to satisfy judgment for $370,000 and for attorney fees for intransigence." The motion requested that the judgment not include any interest. In an attached declaration, Masoud alleged that he could not obtain a loan to pay the judgment until the decree was entered and that Homeira "intentionally delayed and stalled the process." The declaration further stated:

> Had Homeira cooperated in getting the Findings of Fact, Conclusions of Law and Decree of Dissolution signed and filed with the court as soon as an agreement had been reached, the first loan I had applied for would have been processed within 60 days and she would have received her money as agreed.

Masoud's counsel also submitted a declaration, stating in part: "Because of the delay in getting the Decree of Dissolution filed, Masoud was not able to obtain a loan and have the funds available until early October. Had the Decree . . . been

entered in March or April, the appraisal would have been completed sooner and Masoud would have had the funds to pay Homeira." Counsel further alleged that Homeira had refused to allow deduction of the attorney fee lien from the judgment amount and instead wanted to make monthly payments toward the lien. Counsel pointed out that this arrangement did not satisfy the lien and caused Masoud to incur additional fees until Homeira's new counsel agreed to deduct the lien amount from the judgment.

On November 10, 2016, the court granted Masoud's motion and directed him to pay Homeira $370,000.00 within 30 days. The court also awarded him $6,991.75 in attorney fees for Homeira's "intransigence."

On November 21, 2016, Homeira moved for reconsideration, arguing in part that nothing she did prevented Masoud from obtaining financing and paying the judgment within the 60-day grace period allowed by the decree. She claimed the fee award for intransigence was not supported by the record and was deficient absent segregation of the fees and findings of fact.

On December 9, 2016, Homeira's former counsel received $14,745.25 in satisfaction of her lien, and Homeira received $355,254.75 in satisfaction of the judgment.

On December 14, 2016, Masoud's counsel reminded Homeira that she needed to sign a satisfaction of judgment and had 45 days from December 9, 2016, to vacate the family home.

On December 30, 2016, the court entered an order denying Homeira's motion for reconsideration.

On January 10, 2017, Masoud moved to compel Homeira to sign the satisfaction of judgment.

On January 26, 2017, Homeira appealed the December 30, 2016 order denying reconsideration of the November 10, 2016 order that implicitly denied Homeira's claim for interest and awarded Masoud attorney fees for her intransigence.

On February 2, 2017, the court granted Masoud's motion to compel Homeira to sign the satisfaction of judgment and added $500 in attorney fees to its prior award.

On February 6, 2017, Masoud moved to compel Homeira to vacate the family home.

On February 22, 2017, the court granted the motion to compel vacation of the family home and awarded Masoud an additional $1,250 in attorney fees.

On May 15, 2017, Homeira filed an amended notice of appeal, seeking review of the orders entered on February 2, and 22, 2017.

On August 2, 2017, a commissioner of this court ruled that all of the appealed orders are properly before this court for review, but the February 22, 2017 order is reviewable only to the extent it involves an award of attorney fees.

II

Homeira contends that "[t]he trial court exceeded its authority in modifying the decree's unambiguous provision that [Masoud] pay interest on the $370,000 judgment for [Homeira's] share of community property." She argues, in part, that

"[t]he evidentiary record does not support the trial court's order excusing [Masoud] from paying the interest ordered in the decree." We agree.

As a general rule, property distribution provisions in a dissolution decree may not be modified "unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." RCW 26.09.170(1); see Guardado v. Guardado, 200 Wn. App. 237, 242, 402 P.3d 357 (2017) (CR 60 provides a means for reopening the property disposition in a dissolution decree). But courts also have "continuing equitable jurisdiction" that allows them "to grant whatever relief the facts warrant." In re Marriage of Farmer, 172 Wn.2d 616, 625, 259 P.3d 256 (2011). The court's equitable power includes the power to sanction a party for intransigent conduct such as obstruction, delay tactics, or any action that makes the proceedings unduly difficult and costly. In re Marriage of Bobbitt, 135 Wn. App. 8, 30, 144 P.3d 306 (2006); In re Marriage of Foley, 84 Wn. App. 839, 846, 930 P.2d 929 (1997); In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992). Rulings reopening a decree or sanctioning a party for intransigence are reviewed for abuse of discretion. In re Marriage of Curtis, 106 Wn. App. 191, 196, 23 P.3d 13 (2001); Bobbitt, 135 Wn. App. at 29-30.

In this case, Masoud does not argue, and the trial court did not find, that conditions warranting reopening the decree existed. Instead, Masoud contends that the court properly exercised its equitable power "to relieve [him] of postjudgment interest where the wife's intransigence *caused the interest to accrue*." (Emphasis added.) The record does not support this contention.

8

Masoud alleged below that if Homeira had entered final orders and a decree "as soon as [the CR 2A] agreement had been reached," the first loan he applied for "would have been processed within 60 days" and Homeira would have timely received the $370,000 payment. But Homeira points out, and Masoud does not dispute, that the decree and final orders could not have been entered until all remaining issues were decided in arbitration.[1] As evidenced by the arbitrator's 28-page decision, a considerable number of issues remained unresolved. This necessitated a delay in filing the decree and final orders.

Nevertheless, Masoud claims that the seven-week delay between the CR 2A agreement and Homeira's delivery of proposed child support orders to the arbitrator was the result of Homeira's foot-dragging, and that the delay scuttled his first loan application. This claim is flawed in several respects. First, the delay was not as significant as Masoud suggests. His counsel's time sheets show that the parties remained active and in contact during the weeks in question. They also show that the parties reviewed proposed final orders less than four weeks after entry of the CR 2A agreement. Second, the delay cannot be attributed solely to Homeira since neither Masoud nor his counsel ever expressed concern with, or took steps to accelerate, the pace of the litigation during this period. And third, the record does not support an inference that, but for the alleged delay, Masoud's first loan application would have been accepted. The lender rejected his first application in

---

[1] During the hearing memorializing the parties' CR 2A agreement, the parties mentioned several issues that could be arbitrated, including drafting disputes, child support, the amount of time Masoud would have to pay the $370,000, and when Homeira would move out of the house.

just "several weeks." Nothing in the record supports a conclusion that, absent any unnecessary delay in commencing the arbitration, the arbitration could have been completed, the decree entered, and the first loan application processed in just several weeks.

Similarly, Masoud's counsel also alleged below that if the decree had been entered in March or April, Masoud's second loan application (submitted in late April) would have been accepted and he "would have had the funds to pay Homeira." But nothing in the record supports an inference that the decree could have been entered in March or April. The parties entered the CR 2A agreement on March 22, 2016. The arbitration proceedings alone took six weeks (not including the time taken to amend the arbitrator's decision), and at least a portion of the seven weeks between the CR 2A agreement and the start of arbitration cannot be characterized as unnecessary or the result of intransigence.

In sum, the record does not support an inference that, but for the alleged delay, the decree could have been entered at a point when either of Masoud's first two loan applications were pending.[2] The loan applications were simply premature.

The record also belies Masoud's claim that Homeira's intransigence undermined his third loan application. He contends Homeira's motion to amend the arbitrator's ruling and her refusal to sign final orders unnecessarily delayed the arbitrator's decision and entry of the decree, "again slowing the husband's loan application process." But even assuming the facts demonstrate delay amounting to

---

[2] The record is silent as to when the lender denied Masoud's second loan application.

intransigence, they do not support an inference that the intransigence adversely affected or slowed Masoud's third loan application.

Masoud had 60 days from the entry of the decree and final orders on July 25, 2016, to make the $370,000 payment and avoid paying interest. He provided the lender with a certified copy of the decree and orders on July 29, 2016. In his declaration below, Masoud swore that the lender told him on July 1, 2016, "that they hoped to have the loan processed within 45 days of receipt of the certified copy of the Decree of Dissolution." He also swore that the lender continued to work "diligently to process this loan" even after the 60-day period expired. Thus, the record does not support Masoud's claim that Homeira's conduct somehow prevented the lender from processing the loan during the 56 days between the lender's receipt of the certified decree and the end of the 60-day period. To the contrary, given the lender's statement that it hoped to process the loan in 45 days, the record suggests there was sufficient time to process the loan within the 60-day period.

Because Masoud failed to pay the judgment within 60 days of the entry of the decree, and because the record does not support Masoud's claim that Homeira's alleged intransigence "caused the interest to accrue," we reverse the superior court's waiver of Masoud's interest obligation and remand for an appropriate award of interest on the judgment.[3]

---

[3] Masoud argues in the alternative that postjudgment interest should be limited to the period between July 25, 2016, when the decree was entered, and October 6, 2016, when Homeira first refused his offer to pay the attorney fee lien and satisfy the judgment. This argument is more appropriately addressed to the trial court on remand.

III

A

Homeira raises several challenges to the award of attorney fees for her alleged intransigence. She initially contends the award must be vacated because the trial court failed to make any findings supporting it. We disagree.

Normally, the trial court should enter findings of fact and conclusions of law regarding its basis for awarding fees. See In re Marriage of Knight, 75 Wn. App. 721, 729-30, 880 P.2d 71 (1994). But an order entered without detailed findings of fact or conclusions of law does not necessarily prevent effective review or constitute reversible error. In re Parentage of J.M.K., 155 Wn.2d 374, 395-96, 119 P.3d 840 (2005) (affirming award of attorney fees despite lack of findings where bases for award were apparent from the record). In the present case, the court expressly found "intransigence," and the conduct forming the basis of that finding is apparent from the parties' pleadings and the invoices implicitly adopted by the court in determining the amount of the award.

Homeira argues alternatively that the trial court's findings are inadequate because they do not segregate fees caused by intransigence from those incurred for other reasons. But segregation is unnecessary if the party's intransigence permeated the entire proceedings. In re Marriage of Burrill, 113 Wn. App. 863, 873, 56 P.3d 993 (2002). Intransigence includes foot dragging, delay tactics, failure to cooperate with counsel, or any other activities that make litigation unduly difficult or costly. E.g., Bobbitt, 135 Wn. App. at 30; In re Marriage of Wallace, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002); Foley, 84 Wn. App. at 846; In re Marriage of

12

Crosetto, 82 Wn. App. 545, 564, 918 P.2d 954 (1996); Greenlee, 65 Wn. App. at 708.

Here, Masoud sought an award of $6,991.75 in fees for Homeira's ongoing intransigence beginning with delays occurring after entry of the CR 2A agreement in March 2016. Counsel's invoices itemized all of his fees from April through October 2016. The superior court awarded the full amount of those invoices. It is thus clear from the record that the trial court found intransigence permeated the entire proceedings. Contrary to Homeira's assertions, the court was within its discretion in awarding those fees. Given the pre-arbitration delay, Homeira's motion to amend the arbitration award, her interlocutory appeal that she later withdrew, the evidence of obstructive and delaying conduct following entry of the decree, and the fact that Homeira was living rent-free in the family home during the litigation, the court was entitled to infer that Homeira engaged in a pattern of foot dragging, obstruction, and delay that permeated the entire proceedings and warranted an award of all fees in counsel's invoices. Fee segregation was therefore unnecessary.

Masoud concedes, however, that the court's award of $6,991.75 exceeds the actual total of his counsel's invoices by $250. The trial court is directed to correct this error on remand.

B

Next, Homeira contends that the superior court abused its discretion by awarding fees for certain conduct preceding entry of the decree. Without citing authority, she argues in her opening brief that fees for intransigence occurring prior to entry of the decree were barred by language in the CR 2A agreement, the

arbitrator's decision, and the stipulated withdrawal of her interlocutory appeal that denied fees to either party. When Masoud pointed out that Homeira cited no supporting authority, she filed a reply brief in which she raised collateral estoppel and res judicata for the first time and supplied supporting argument and authority. We do not consider argument or authority raised for the first time in a reply brief. King v. Rice, 146 Wn. App. 662, 673 n.30, 191 P.3d 946 (2008) (declining to consider argument and authority made for the first time in a reply brief).

IV

Last, Homeira contends that the court commissioner's "orders dated February 2, 2017 and February 22, 2017 must be vacated because they are based upon the prior incorrect orders" entered on November 10, 2016 and December 30, 2016. As mentioned above, the November 2016 order granted Masoud's motion for attorney fees and satisfaction of the judgment without interest, and the December 2016 order denied Homeira's motion for reconsideration. The February 2, 2016 order again directed Homeira to execute satisfaction of the judgment, pay the previously awarded attorney fees for intransigence, and pay additional fees for additional intransigence. The February 22, 2016 order directed Homeira to immediately vacate the family residence, pay utilities, pay additional attorney fees, and pay terms for every day she remained in the premises after February 6, 2016.

Although we reverse the November 2016 order to the extent that it waived Masoud's interest obligation, Homeira was obligated to comply with that order and the order denying reconsideration absent a stay pending appeal. RAP 7.2(c) provides that "the trial court has authority to enforce any decision of the trial court

14

and a party may execute on any judgment of the trial court" unless "enforcement . . . [has been] stayed as provided in rules 8.1 or 8.3." In addition, it is well established that the filing of an appeal does not deprive the trial court of authority to enter contempt or sanction orders. State v. Ralph Williams' North West Chrysler Plymouth, Inc., 87 Wn.2d 327, 331, 553 P.2d 442 (1976); In re Marriage of Mathews, 70 Wn. App. 116, 126, 853 P.2d 462 (1993). Indeed, "where the court has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make the order, a party refusing to obey it, however erroneously made, is liable for contempt." Dike v. Dike, 75 Wn.2d 1, 8, 448 P.2d 490 (1968); accord In re J.R.H., 83 Wn. App. 613, 616, 922 P.2d 206 (1996).

We deny the parties' requests for an award of fees and costs on appeal and Homeira's request for an award of fees and costs at trial.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

We concur:

_____

_____

_____

15